**Carlton DAWSON, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 99SC995.**

Supreme Court of Colorado, En Banc.

July 2, 2001.

Rehearing Denied Aug. 20, 2001.*

David S. Kaplan, Colorado State Public Defender, Cynthia Camp, Deputy State Public Defender, Denver, CO, Attorneys for Petitioner.

Ken Salazar, Attorney General, Christine Cates Brady, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, CO, Attorneys for Respondent.

Justice KOURLIS delivered the opinion of the court.

This is the second of two decisions in which we hold that a providency advisement

must include both the possible incarceration sentence and the attendant mandatory parole, even if the parties to a plea agreement have stipulated to a sentence to probation or community corrections.[1]  In this case, Defendant Carlton Dawson (Dawson) seeks relief from a series of convictions and sentences entered by the Denver County District Court pursuant to negotiated plea agreements.  Dawson argues that he received an inadequate Crim. P. 11 advisement in his providency hearings.  Thus, he claims his sentence should be modified or he should be given the opportunity to withdraw his plea.  Applying the analysis we set forth today in *Young v. People*, 30 P.3d 202, at 205–207 (2001), we conclude that Dawson has no claim for relief.  Accordingly, we affirm the court of appeals' decision in *People v. Dawson*, No. 98CA0433 (November 18, 1999) (not selected for official publication).

## I.

On July 11, 1994, in Case No. 94CR1824, Dawson pled guilty to unlawful possession of a schedule II controlled substance, a class 4 felony pursuant to section 18–18–405, 6 C.R.S. (2000).  At the providency hearing, the prosecuting attorney stated that the parties had agreed to a sentencing recommendation of two years if the circumstances were non-aggravated, and a four-year sentence under aggravated circumstances.  The trial judge explained to Dawson that "the District Attorney has agreed to make some sentencing recommendations at the time of the sentencing, and we've discussed, I think at some length now, about how the sentencing recommendations are not binding upon me."  The trial judge advised Dawson that by pleading guilty to a class 4 felony, he faced a presumptive range of two to six years in the Department of Corrections (DOC).  The trial judge also stated that aggravating circumstances could inflate the maximum sentence to twelve years in DOC, and that "any DOC sentence would be followed by a period of parole."

At the sentencing hearing on October 31, 1994, the parties agreed that sentence enhancement did apply because Dawson was on bond at the time of the offense and the conviction was his fifth felony.  Dawson requested that the court sentence him to community corrections instead of DOC because he needed treatment for his crack cocaine addiction.  The court sentenced Dawson to eight years in a community corrections program and stated that the sentence would be converted to eight years at DOC if he did not comply with and complete the program.

Within days of entering community corrections, Dawson walked away from the program.  As a result, the trial court transferred Dawson's sentence from eight years in community corrections to eight years in DOC "plus any term of parole authorized by Section 17–22.5–303."  In addition, the state charged Dawson with escape, a class 3 felony, in violation of sections 18–8–208(2), 6 C.R.S. (2000) and 17–27–108, 6 C.R.S. (1993 Cum.Supp.).

On January 17, 1995, Dawson pled guilty to an added second count, attempted escape, a class 4 felony, pursuant to section 18–8–208.1, 6 C.R.S. (2000).  In exchange for his plea, the state dismissed the charge of escape.  At the providency hearing the court advised Dawson that the sentence for a class 4 felony ranged from two to six years and could be increased up to twelve years under aggravating circumstances.  The court also advised Dawson that the escape statute required his sentence for an escape charge to be served consecutive to any sentence he was already serving.

On that same day, the trial court sentenced Dawson to three years of incarceration at DOC consecutive to the eight-year sentence imposed earlier.  Although the trial judge did not orally discuss mandatory parole, the mittimus indicated that Dawson would serve three years of mandatory parole.

Dawson later filed a Crim. P. 35(c) motion alleging that he did not knowingly and voluntarily enter into the guilty pleas because he received an inadequate mandatory parole advisement.  The district court denied the mo-

---

1.  We granted certiorari to determine "whether a statutorily mandated period of parole is a direct consequence of a plea of guilty that results in a sentence to community corrections, which is later terminated and transferred to the Department of Corrections."

tion. Dawson appealed the ruling, alleging that the district court's failure to advise him of the three-year mandatory parole period rendered his guilty plea involuntary. He requested that the court reduce each sentence by three years to correct the error.

The court of appeals affirmed the sentences, holding that although the district court erred in both cases by failing to advise Dawson adequately regarding the mandatory parole period in each case, the error was rendered harmless because the total years of imprisonment and mandatory parole fell below the twelve-year maximum sentence he could have received on each count. *People v. Dawson*, No. 98CA0433, slip op. at 7. The court of appeals also denied relief on Dawson's claim that his plea agreement in the first case included a "stipulated" sentence cap of four years. *Id.* at 3. Lastly, the court of appeals noted that Dawson had never sought to withdraw his plea, but had rather requested only sentence reformation. In the absence of a request to withdraw the plea, such remedy would not be available. Dawson did not seek certiorari on that issue.

## II.

■ Today, in *Young v. People*, 30 P.3d 202, at 205, we reiterated that Crim. P. 11 requires that a trial court advise the defendant of the "possible penalty or penalties" attendant upon a plea of guilty. Because mandatory parole is a direct and automatic consequence of a sentence to DOC, and a sentence to DOC is a possible penalty for a felony conviction, the trial court must advise the defendant of mandatory parole. *Id.* This is true even if the plea agreement contemplates a sentence to probation or community corrections. *Id.* at 207. The only exception to this requirement is if the parties stipulate to a sentence to probation or to community corrections and the judge "explicitly states at the providency hearing that it will accept and agree to be bound by the plea agreement, and so advises the defendant." *Id.* at 207. *People v. Wright*, 38 Colo.App. 271, 273–75, 599 P.2d 249, 250–52 (1976), *aff'd*, 194 Colo. 448, 573 P.2d 551 (1978).

■ If a defendant receives an improper advisement, it is error, but may be harmless.

*Id.* at 205. "[H]armless error results when the term of imprisonment, combined with the mandatory period of parole, falls within the range of sentence that the defendant was at risk of receiving." *Craig v. People*, 986 P.2d 951, 964 (Colo.1999).

## III.

■ In Case No. 94CR1824, the trial judge advised Dawson that he faced up to twelve years of incarceration in DOC, followed by a period of parole. Although the parties tendered a sentencing recommendation, the trial judge did not agree· to be bound by the agreement and specifically reserved the right to sentence him "however I think is right." The defendant requested at the sentencing hearing that the court impose a community corrections sentence, and acknowledged that such sentence would need to be "lengthy." The judge did sentence Dawson to eight years in community corrections, and advised him that failure to comply with community corrections placement requirements would result in a DOC sentence of eight years. Even though the judge advised Dawson that he faced mandatory parole, she did not advise him of the length of the parole. Therefore, his advisement was deficient, and the sentence he was advised that he risked receiving was twelve years.

■ At the second providency hearing, at which Dawson pled guilty to attempted escape, the trial judge advised him that he faced up to twelve years of incarceration, to be served consecutively to his sentence in case No. 94CR1824.[2] Because the judge failed to advise Dawson that a class 4 felony requires a mandatory parole period of three years, Dawson received a deficient Crim. P. 11 advisement.

■ We now turn to whether the trial courts' errors were harmless. We conclude that they were. In the first case, the trial court advised Dawson that he faced a maximum penalty of twelve years. In the second case, the trial judge advised Dawson that he faced another, consecutive maximum of twelve years. Thus, Dawson was at risk of a

---

**2.** The parties did not stipulate to a sentence in  the second case.

sentence of twenty-four years between the two cases. Ultimately he received a total sentence of eleven years, plus three years of mandatory parole.[3]

The period of incarceration plus the term of mandatory parole fits within the maximum sentence that the courts advised Dawson he risked receiving.

### IV.

In conclusion, we find that Dawson suffered no prejudice from the inadequate Crim. P. 11 advisements. Therefore, we affirm the court of appeals decision in denying Dawson's request for relief under Crim. P. Rule 35(c).

Justice MARTINEZ dissents, and Justice BENDER joins in the dissent.

Justice RICE and Justice COATS do not participate.

Justice MARTINEZ dissenting:

In this case, the majority depends upon its holding in *Young v. People*, 30 P.3d 202 (2001), to conclude that the trial court's failure to advise the defendant of the mandatory parole consequences of a sentence to incarceration was harmless error. The majority reasons that because the trial court advised the defendant of the statutory maximum period of incarceration of up to twelve years when he pleaded guilty pursuant to a plea agreement, a period of eight years to the Department of Corrections (DOC) plus three years mandatory parole fit within the scope of that advisement. Maj. op. at 216.

The majority further argues that, because the trial court informed the defendant that the sentencing recommendations of two years, or four years if there were aggravating circumstances, were not binding upon it, no error was committed when the court sentenced Dawson to eight years in community corrections. Accordingly, utilizing the same reasoning as in *Young*, the majority concludes that a providency advisement of statutory periods of incarceration sufficiently advises a defendant of the sentence he actually risks receiving in entering a guilty plea pursuant to a stipulation unless the trial court *explicitly accepts* the stipulated sentence in a plea agreement.

In my view, the failure of the trial court here to advise the defendant that it was rejecting the sentence recommendations in the plea agreement and to call upon him to either affirm or withdraw his plea was error. The remedy for that error is to allow the defendant an opportunity to withdraw his plea. If the defendant, upon remand, chooses to affirm his plea, then the sentence imposed by the trial court should stand. Once a court has rejected a plea agreement and a defendant has persisted in entering his plea, then, under our analysis in *Clark v. People*, 7 P.3d 163 (Colo.2000), the statutory maximum sentence of which he was advised is the penalty that he is at risk of receiving. Thus, while the failure of the trial court here to advise the defendant of the attendant period of mandatory parole was error, that error is harmless because the period of incarceration to which he was sentenced, when combined with the requisite period of mandatory parole, is less than the statutory maximum sentence of which the defendant was advised.

Thus, in no event will the sentence imposed by the trial court in this case be modified. Either the defendant may withdraw his plea upon remand, or failing to do so, the trial court's sentence should stand. Accordingly, I would affirm the court of appeals' decision in part and reverse in part.

### I.

Though the majority details the facts of this case, Maj. op. at 214–216, I will recount some of the relevant facts here. In a plea bargain between Dawson and the People, the parties agreed to a sentence stipulation of two years if circumstances were non-aggravated, and four years under aggravated circumstances. At the providency hearing, the trial court repeatedly explained to Dawson

---

**3.** Even though the sentences were consecutive, the period of parole is concurrent. *See* § 18–1–

105(V)(E), 6 C.R.S. (2000).

that the sentence outlined in the plea agreement was merely a recommendation. The trial judge told Dawson that "the District Attorney has agreed to make some sentencing recommendations at the time of the sentencing, and we've discussed, I think at some length now, about how the sentencing recommendations are not binding upon me." The trial judge went on to advise Dawson that, by pleading guilty to a Class 4 felony, he could be sentenced within a presumptive range of two to six years in the DOC, with a possibility of up to twelve years if circumstances were found to be aggravating. The trial judge also informed Dawson that "any DOC sentence would be followed by a period of parole." The trial court did not, however, advise the defendant that he could withdraw his plea if the court did not follow the plea agreement at the time of sentencing.

At sentencing, the trial judge acquiesced to Dawson's request that he be sentenced to community corrections, but sentenced him to a period of eight years in community corrections. The court also instructed the defendant that if he were to violate the rules of community corrections, that sentence would be converted to eight years at DOC. However, the court did not call upon Dawson to affirm or withdraw his plea. A couple of days after entering community corrections, Dawson walked away from the program, and was charged with escape, a class 3 felony violation. At sentencing for that charge, his original eight-year sentence to community corrections was converted to eight years in DOC plus three years of mandatory parole.

Dawson later filed a Crim. P. 35(c) motion alleging that he had received an inadequate mandatory parole advisement, and thus had not entered a knowing or voluntary guilty plea. The trial court denied Dawson's motion.

On appeal, the court of appeals concluded that the trial court erred by rejecting the sentence recommendations in the plea agreement without advising Dawson that it had done so, and without calling upon him to either affirm or withdraw his plea. *Dawson v. People*, No. 98CA433, slip op. at 2–3 (Colo. App. Nov. 18, 1999)(not selected for official publication). The court of appeals recog-

nized that the remedy for this type of trial court error is the withdrawal of a defendant's guilty plea, but concluded that because Dawson had never requested to withdraw his plea, the granting of that type of relief would be improper.

The court of appeals then relied upon the holding in *People v. Snare*, 7 P.3d 1025 (Colo. App.1999), to conclude that the trial court properly resentenced Dawson to eight years in DOC upon his termination from community corrections. *Dawson*, No. 98CA433, slip op. at 4–5. Upon resentencing, the court of appeals noted, a trial court need not consider the mandatory period of parole, and may sentence a defendant to a period of imprisonment in DOC equal in length to the sentence to community corrections. *Id.* Furthermore, the court of appeals held that the trial court's failure to advise Dawson of mandatory parole was harmless error in light of the advisement Dawson received that he could be subject to a sentence of two to twelve years imprisonment. *Id.* at 7. Accordingly, the court of appeals affirmed the trial court's denial of Dawson's motion to modify the his sentence. *Id.* at 8.

## II.

As explained in my dissenting opinion in *Young*, a trial court: (1) must advise the defendant that any sentence concessions or stipulations made pursuant to a plea bargain are merely recommendations to the court, *People v. Wright*, 194 Colo. 448, 450, 573 P.2d 551, 553 (1978); (2) must advise the defendant that the court is not bound by the recommendations made in the plea agreement, Crim. P. 11(b)(5); § 16–7–301(4)(a)(I); (3) if it chooses not to accept the sentencing stipulations or concessions in the plea agreement, it must, at the time of sentencing explicitly advise the defendant of the rejection of the plea agreement, Crim. P. 32(d); and (4) having advised the defendant that it is rejecting the plea agreement, it must call upon the defendant to either affirm or withdraw his guilty plea, Crim. P. 32(d). If the court fails to follow the above requirements, it is·error, the remedy for which is the withdrawal of the guilty plea. *People v. Wright*, 38 Colo.App. 271, 273–75, 559, 559

P.2d 249 p.2d 249, 250–52 (1976), *aff'd,* 194 Colo. 448, 573 P.2d 551 (1978).

In my dissenting opinion in *Young,* I concluded that a five-year community corrections sentence was within the five-year DOC sentence stipulation considered in the plea agreement. Because community corrections serves as a less severe diversion from DOC, *People v. Wilhite,* 817 P.2d 1017, 1019 (Colo. 1991); *Wilson v. People,* 747 P.2d 638, 639 (Colo.1987), I concluded that the community corrections sentence could be considered, in that case, as an equivalent alternate sentence. In this case the court did not follow the sentencing recommendations offered by the district attorney because a period of eight years in community corrections cannot be regarded as a lesser or equal sentence to a period of four years in the DOC.

A sentence to DOC is undoubtedly more harsh than an equal sentence to community corrections. *Wilson,* 747 P.2d at 639. However, an eight year sentence is double the four years maximum contemplated in the plea agreement here. Furthermore, a direct sentence to community corrections carries with it the possibility that a defendant may be terminated from the community corrections program and then be resentenced to an equal time in DOC. §§ 17–27–105(d)–(g). Thus, an eight year sentence to community corrections, while possibly more lenient than a four-year DOC sentence with respect to the place of confinement, has the possibility of reverting to an eight-year DOC sentence, which is clearly twice as severe. Therefore, assessment of whether the sentence imposed by the trial court in this case can be characterized as having fallen within the parameters of the sentencing recommendations in the plea agreement reveals that the sentence of eight years in community corrections was outside of the scope of the plea bargain sentence stipulation.

By imposing a sentence of eight years to community corrections, the trial court here clearly rejected the recommendations in the plea agreement. As such, under Crim. P. 32(d), the trial court was required to inform the defendant of its decision to reject the plea agreement, and to call upon the defendant to either affirm or withdraw his plea.

The trial court here erred by doing neither of those things. The defendant was given no explicit advisement that the plea recommendations had been rejected, nor any explicit advisement that he was to either affirm or withdraw his plea. The remedy for such an error is withdrawal of the plea. *Wright,* 38 Colo.App. 273–75, 559 P.2d at 250–51. Though the court of appeals reached a similar conclusion, *Dawson,* No. 98 CA433, slip op. at 3, the court of appeals also concluded that because Dawson did not seek the relief of withdrawal of his plea, granting this relief would be improper. I do not agree. I would have the court of appeals remand this case to the trial court to give Dawson an opportunity to withdraw his plea if he so chooses.

### III.

If on remand, Dawson were to affirm, rather than withdraw, his guilty plea, the sentence imposed by the trial court would remain in place. We have held that a defendant must be given an advisement of the range of penalties that he is at risk of receiving. *Craig v. People,* 986 P.2d 951, 964–65 (Colo.1999). Generally, the risk of penalties can be either the statutory maximum penalty, including mandatory parole, for the class of felony committed, or the stipulated maximum penalty in a defendant's plea agreement plus the attendant period of mandatory parole. In *Clark,* we held that if an advisement about mandatory parole is improper, then a defendant must be given the opportunity to withdraw his plea, unless the error in the advisement is harmless or can be rendered harmless. 7 P.3d at 166. The error in the advisement is harmless if the length of the incarceration and the mandatory parole term, combined, falls within the range of penalties that the trial court advised the defendant he could receive as a result of his plea. *Id.*

In *Clark* we determined that where a defendant has agreed to plead guilty in return for a sentencing concession, to assess the "full range of penalties that the defendant risked receiving, the stipulated maximum term of imprisonment supplants the statutory term of imprisonment described by the trial court during the Crim. P. 11 advisement." 7 P.3d at 166. Thus, if the sentenc-

ing recommendations in the plea agreement here were in place, we would use the stipulated maximum penalty to determine whether the deficient mandatory parole advisement was harmless error or not. However, because I would remand this case to the trial court so that Dawson could withdraw his plea, if he chooses to affirm his plea instead, it is with the full knowledge that no sentencing recommendations are in place. Dawson's plea would be voluntarily entered with the knowledge that he could receive a sentence of up to twelve years, precisely as he was advised by the trial court in the providency hearing.

Thus, because Dawson's plea would be entered without the expectation of any sentence concessions, the stipulated maximum term of imprisonment *would not* supplant the statutory maximum term of imprisonment described by the trial court during the Crim. P. 11 advisement. *See id.* Therefore, any harmless error analysis would be performed using the statutory maximum prison term of twelve years of which Dawson was advised.

By failing to advise Dawson of the possibility of mandatory parole attendant upon a sentence to DOC, pursuant to his plea agreement, the trial court committed error. *Craig*, 986 P.2d at 963. However, we have held that when a defendant is alerted to the full range of penalties to which he could be sentenced, but is not advised of mandatory parole, "harmless error results when the term of imprisonment, combined with the mandatory period of parole, falls within the range of sentences that the defendant was at risk of receiving." *Id.* at 964. Here, the trial court advised Dawson that he could face a statutory maximum sentence of up to twelve years if he pleaded guilty. Though the trial court failed to advise him of the resulting period of mandatory parole to any DOC sentence, such error is harmless because the total sentence imposed by the trial court, eight years in DOC plus three years of mandatory parole, is less than the twelve years of which he was advised. Accordingly, in such circumstances, "a reviewing court need not decide whether a defendant's sentence must be reformed in order to render harmless the erroneous advisement." *Id.*

Thus, if Dawson chooses to affirm his plea on remand, his sentence need not be modified.

## IV.

The rule in Crim. P. 32(d) states that a trial court must advise a defendant that it rejects the sentence recommendations in his plea agreement, and must give the defendant an opportunity to withdraw his guilty plea. If a trial court fails to give an advisement of mandatory parole, an explicit advisement that a plea agreement has been rejected, and an opportunity to the defendant to withdraw his plea, that court commits error, the remedy for which is withdrawal of the guilty plea.

The majority holds here that the trial court's deficient advisement of mandatory parole is harmless error. The majority, by adopting its reasoning in *Young*, No. 00SC240, further limits our holding in *Clark* to the inverse of the requirement in Crim. P. 32(d), holding that, unless a trial judge explicitly *accepts* a plea agreement, then an advisement of the statutory maximum penalties is sufficient.

The trial court's failure to advise Dawson that it had rejected the sentence recommendations in his plea agreement and give him an opportunity to withdraw his guilty plea, as well as its failure to advise Dawson of mandatory parole, was error. The remedy for that error is the withdrawal of Dawson's guilty plea. If, on remand, Dawson chooses to affirm, rather than withdraw, his guilty plea, the sentence imposed by the trial court, eight years DOC and three years mandatory parole, should stand. Though the trial court committed error in failing to advise Dawson of the attendant periods of mandatory parole, such error is harmless in light of the Crim. P. 11 advisement that Dawson received at the providency hearing stating that he could receive up to twelve years incarceration.

Thus, I would return this case to the court of appeals with directions to remand to the trial court to afford Dawson the opportunity to withdraw his guilty plea. Furthermore, I would instruct the trial court that if Dawson chooses to not withdraw his plea, the sentence of eight years to DOC plus three years of mandatory parole is valid. Therefore I

would affirm the court of appeals decision in part, reverse in part, and remand with directions. Accordingly, I respectfully dissent.

Justice BENDER joins in the dissent.